JAMES J. DUFFY, Respondent, v. SEVERIN JOHNSON, Appellant.

(172 N. W. 237.)

**Appeal and error — new trial.**

1. Upon an appeal from a judgment and an order denying a new trial, *held* the evidence is sufficient to support the judgment.

**Contracts — lease of horses and machinery — notice to quit using same — plaintiff justified in hiring other horses.**

2. Where one had leased his farm and personal property, consisting of horses and machinery, to another with the understanding that the horses might be used during the time of the lease in doing other work for other persons and in farming other lands than that leased from the lessor, with the further agreement that the lessor was to receive one sixth of such earning, and, upon the lessee proceeding to do such other work and harvesting crops other than those on the land leased, is notified by the lessor to refrain from doing so, and, upon the lessee's refusal, the lessor brought an action in claim and delivery and took possession of the personal property in question, and the lessee rebonded, and the lessor, after such rebonding, again served notice upon the lessee not to take the horses off the farm for the purpose of doing the other work and the lessee complied with such order; it is *held* he could rely upon such second order given after rebonding and receiving possession, and comply therewith, and that it was not necessary there be evidence of threats of violence against him, or that he be placed in fear before he would be justified in hiring other horses to do the work, instead of using the ones leased, and paying for

their use and feed, with which to do the work of the horses he was prevented from using by the lessor.

Opinion filed April 1, 1919.

Appeal from the District Court of Ward County, *K. E. Leighton, J.* Affirmed.

*Johnson & Meilke* and *Greenleaf, Wooledge, & Lesk,* for appellant. *McGee & Goss,* for respondent.

GRACE, J. Appeal from the district court of Ward county, K. E. Leighton, Judge.

This is an action by the plaintiff against the defendant to recover damages for the violation of certain terms of an oral lease of certain land and personal property. The undisputed facts, or as substantially proved by the evidence, are as follows: The defendant was the owner of a certain farm in McLean county, North Dakota. In the fall of 1916, the plaintiff and the defendant entered into a contract by the terms of which the plaintiff leased defendant's farm on shares for the farming season of 1917. Under the terms of the lease, the defendant was to furnish the plaintiff with ten head of horses for use on the defendant's farm. The plaintiff claims that the horses were to be furnished also for use on other places and farms as plaintiff might see fit to use to work the same for himself and others.

This contention finds ample support in the evidence. Plaintiff fully performed his agreement with defendant with reference to farming the land which he leased from the defendant. Plaintiff, during the harvest season of 1917, undertook the performance of and did perform certain labor for other parties in which he desired to use the defendant's horses, which, under the terms of the oral lease, he had a perfect right to do. At the time he was about to enter upon the performance of such work with such horses, he was notified by defendant not to take the horses off the defendant's farm. Plaintiff insisted on taking the horses and performing such work for other parties. Thereupon the defendant commenced an action in claim and delivery, and the sheriff, executing the writ therein, took the possession of the horses in question from plaintiff on the 25th day of August, 1917, and during the time when plaintiff was using said horses in cutting grain for one Bondley. There-

after the plaintiff rebonded and said horses were returned to defendant. After the return of the horses to plaintiff, the defendant again notified him not to take the horses off defendant's farm. At the time defendant by the sheriff took the possession of the horses from plaintiff, the plaintiff procured other horses to do the work which he was doing for other parties, for the use and feed of which he had to pay, as shown by the testimony. After the return of defendant's horses to the plaintiff and after the second notice by defendant to plaintiff not to take the horses off defendant's farm, plaintiff did not do so, but left the horses upon the defendant's farm, and fed and took care of them, and did not work them, but hired and used other horses to do the work for other parties, who were Bondley, and also for a party by the name of Dale. The plaintiff and one Gage had also rented from one Dale other land to the amount of about 400 acres. All of this work was outside of and exclusive of the work done upon defendant's farm in pursuance of the terms of the oral lease. The plaintiff also claimed $140 for the use of a new header which he bought and used in harvesting the crop upon the land he leased from the defendant.

The terms of the lease were that defendant was to furnish all the seed, machinery, and horses with which to farm said land, and the plaintiff was to do all the work and receive one third of the grain so raised. It seems the grain in 1917 was very short, and, in order to save the grain, it was necessary to use a header instead of a binder. Whether the defendant refused to furnish the header, and whether the plaintiff was justified in procuring another header to cut the grain, were questions of fact for the jury, which have been decided in favor of the plaintiff. The jury returned a verdict in favor of plaintiff, and a judgment was entered for $549.44. A considerable share of this judgment is for the hire and feed of the horses procured by the plaintiff to do outside work for various parties. It is also shown by the evidence that the defendant was to get one sixth of whatever was earned by such outside work. This credit has been allowed defendant by plaintiff. There is sufficient evidence to support the judgment, and there is really but a single question involved in the case, which is: After the horses were rebonded by plaintiff, and after being so rebonded and taken back into plaintiff's possession, and upon the defendant again notifying plaintiff not to take them off the place to do other work, was

the plaintiff justified in not using the horses and in hiring other horses to take their place? We think he was justified in not using defendant's horses after notice not to do so after the horses had been returned to plaintiff's possession by rebonding. We do not think it necessary that the plaintiff would have to show he was prevented from using such horses by force, or that he desisted from using such horses by reason of threats of violence, etc., and that by reason of such threats, he was put in fear and did not work the horses. He had every reason to believe, after the second notice, that if he undertook to use such horses, he would, in some manner, be prevented from doing so by the defendant. The defendant had already taken the possession of them from him once, thus compelling the plaintiff to rebond, and from this plaintiff had every reason to believe the defendant, in some manner, would make his second notice good. It must also be remembered it was harvest time, the crops were being harvested, and there was no time to be lost, and we think the plaintiff was fully justified in hiring the other horses and proceeding with the work which he had a right to do. Under the contract, he had a right to perform outside work; he had a right to use defendant's horses in doing so, and all the defendant was entitled to receive was the one sixth of what was earned, and that the plaintiff was willing to give him. The verdict and judgment are sufficiently sustained by the evidence. There was no error in the instructions given by the court. There is no other error in the record.

Judgment is affirmed, with statutory costs on appeal.

Christianson, J. I dissent.